UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLA JONES,

    Plaintiff,
v.                                      Case No. 19-12839
                                           Honorable Victoria A. Roberts

ANN ARBOR PUBLIC SCHOOLS,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT [ECF No. 25]

**I.    INTRODUCTION**

Carla Jones ("Jones"), an African American teacher assistant, brings this race discrimination suit against her former employer, Ann Arbor Public Schools ("AAPS"). Before the Court is AAPS' motion for summary judgment [ECF No. 25].

For the reasons below, the Court **GRANTS** AAPS' motion.

**II.    BACKGROUND**

Jones is an African American woman. AAPS hired her in April of 2017 as a childcare worker. Jones obtained a Bachelor of Arts degree in psychology with a minor in Business Administration and holds multiple

training certificates including a temporary teaching certificate which allows her to work as a substitute teacher and a paraprofessional.

In December of 2018, Gary Court ("Court"), the Principal of Angell Elementary School ("Angell"), interviewed Jones to serve as a probationary teaching assistant. With Court's recommendation, AAPS hired Jones effective January 7, 2019.

Jones assisted two fourth-grade teachers, Jaejung Lee ("Lee") (Asian American) and Jessica Sawin ("Sawin") (Caucasian). Jones was also assigned to Katie Ryan ("Ryan") (Caucasian), a music teacher's, fourth-grade class. As a Teaching Assistant, Jones greeted students in the morning; she aided teachers by making copies, grading papers and helping students with their readings.

By March of 2019, Court received complaints about Jones' performance from Lee, Sawin and Ryan. On March 20, 2019, Court met with Jones. They disagree concerning the performance issues Court brought to Jones' attention. After the meeting, however, Jones emailed Court and said:

> Hi Gary,
>
> Thank you for providing my evaluation in such a positive way that has encouraged me to improve myself and correct my flaws.

2

> I was concerned about weather [sic] or not I need to provide documentation about my diabetes because I have a glucometer that I use daily to test my blood sugar. And I may have a snack during a time period that is not lunch – maybe out of the class.
>
> -Carla

Through April 2019, Lee, Sawin and Ryan continued to complain to Court about Jones' performance. Court observed Jones on April 7, 2019 or April 8, 2019 and concluded Jones was not adequately assisting students. He recommended Jones' termination. Shonta Langford ("Langford") – the Executive Director of Human Resources for Ann Arbor Public Schools – placed Jones on paid administrative leave and scheduled a pre-termination hearing for April 24, 2019.

Langford conducted the hearing – the union represented Jones; Court and Jones testified. Court shared concerns regarding Jones' alleged cell phone usage, insufficient assistance to students and her inability to follow directions. During the hearing he also relayed the concerns of Lee, Sawin and Ryan. Jones denied using her cell phone in the classroom or while she worked with students. Although multiple teachers testified that Jones performed below par, Jones claims the teachers' recollections of their experiences with her were untrue; and, no records or contemporaneous notes supported their statements.

Based on the testimony presented at the hearing and Court's recommendation, Langford terminated Jones on April 29, 2019. Jones' contract provided an option to return to a childcare position at Eberwhite Elementary School; she declined.

Jones filed a charge with the EEOC; her sole claim was discrimination based on race. After its investigation, the EEOC's determination was inconclusive.

Jones filed this action on September 28, 2019. AAPS moves for summary judgment. The motion is fully briefed.

### III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is

the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV.   ANALYSIS

Jones filed a two-count complaint alleging race discrimination in violation of Title VII, 42 U.S.C. §2000(e) *et seq*.

### A.   Jones Cannot Establish a *Prima Facie* Case of Racial Discrimination under 42 U.S.C. §2000(e) *et seq.*

Jones alleges: (1) AAPS' decision to terminate her employment, uphold the termination and otherwise subject her to wrongful and discriminatory treatment, was based on race; and (2) AAPS and its employees, Court in particular, were pre-disposed to discriminate against

5

Jones on the basis of race and acted in accordance with that predisposition when it terminated her. Jones also claims if she were white, AAPS would not have discharged her.

AAPS says it is entitled to summary judgment because Jones cannot establish a *prima facie* case of race discrimination under 42 U.S.C. §2000(e) *et seq,* because there is no direct evidence that race motivated its decision to fire Jones, and Jones fails to identify a similarly situated white teaching assistant who AAPS treated more favorably. The Court agrees.

Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648 (6th Cir. 2012). "A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

### i.     No Direct Evidence

Jones contends she has several items of direct evidence of discrimination against AAPS: (1) Court flew a Confederate flag at his home; (2) Court made a comment about putting a noose or string on 5th graders at his school; (3) Court and the teachers Jones assisted used coded and demeaning language to hide their racial animus; and (4) AAPS' justifications for Jones' termination are untrue.

AAPS says even if these allegations were true, they are not direct evidence that race motivated Court's recommendation and AAPS' ultimate decision to fire her.

Under Title VII, direct evidence "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions" and does not require any inferences. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006) (citation omitted). If direct evidence of discrimination is produced, then the burden shifts to AAPS to show that it would have taken the adverse employment action even in the absence of discrimination. *Id*.

a. <u>Confederate Flag</u>

Jones claims her ex-husband, Brian Richmond ("Richmond"), drove past Court's home sometime between 2000-2010 and saw a confederate flag hoisted on a flagpole in Court's front yard. Court denies this allegation.

The alleged flag incident, if true, took place years before AAPS employed Jones as a probationary teaching assistant at Angell School. Court interviewed Jones and recommended that AAPS hire Jones as a teaching assistant fully aware of her race. Absent any racial or discriminatory comments directed towards Jones during her employment with AAPS, the Court would need to infer that a confederate flag displayed at Court's home years before she started working meant Jones' race was a reason why Court recommended she be fired. This is a huge leap which this Court is not prepared to make.

b. <u>Noose and Demeaning Comments</u>

Jones says that while seated at lunch with Court and Ward, Court allegedly said "you know, I'm thinking about putting a string around the 5th graders' necks and pulling the noose to approximate their performance" [ECF No. 25-2, PageID.157].

Jones also claims that Court and teachers used "coded language" to hide their racial animus but the only "coded language" Jones identifies

comes from Court's recommendation to terminate Jones. Then, he says, "Miss Lee and Mrs. Sawin report that Ms. Jones can file papers, enjoys reading with the students…and cares about the students. This is not about character but it is about performance and fit in the position of a teaching assistant." [ECF No. 30-19, PageID.759]. Jones says these comments are demeaning and evidence racial animus. [ECF No. 30, PageID.568].

Both Court and Ward deny Court made a noose comment. Even if Court said it, this Court would need to infer that the statement – made in reference to all 5th graders – evinces that Jones' race factored in Court's termination recommendation. The need to even try to make such an inference belies any claim that the statement is direct evidence of discrimination.

Similarly, the comments regarding Jones' reading ability and administrative skills are completely devoid of context and a far cry from direct evidence of racial discrimination. The Sixth Circuit held that isolated and ambiguous comments are insufficient to support a finding of direct discrimination. *Hall v. Michigan State Police Dep't*, 290 F. App'x 913, 917 (6th Cir. 2008*); See e.g. Das v. Ohio State Univ*., 57 F. App'x 675, 678-79 (6th Cir. 2003) (isolated remark by a company agent not related to the decision-making process or made proximate to the alleged adverse

employment action is insufficient to constitute direct evidence of outlawed employment discrimination) (citation omitted).

Even if all the comments Jones points to were to be believed, not a single one indicates that AAPS' decision to fire Jones was race-based. *Hall*, 290 F. App'x at 917.

### c. Disagreement Regarding Job Performance

Finally, Jones says the reasons given by AAPS for her termination are untrue and reveal AAPS' racial animus. Jones claims she did not have her phone on during class, did not eat during class, and performed the same job previously with no trouble.

AAPS says Court decided to recommend Jones' termination because multiple teachers reported her subpar job performance and he observed her himself. Ms. Langford made the same decision to terminate Jones based on evidence presented at the pre-termination hearing as well as follow-up conversations Langford had with Lee and Sawin. Even if Langford decided to terminate Jones based on information ultimately proved to be inaccurate, AAPS says the "honest belief rule" shields Langford's decision.

Court testified that he personally observed Jones' performance on April 8, 2019 or April 9, 2019 for a minimum of 30 minutes. [ECF No. 25-4, PageID.181]. During that observation, Court says he saw Jones attempt to

work with students in a group, but she failed to provide adequate support to them. After Court observed Jones and received multiple complaints, he made the recommendation to terminate her on April 19, 2020. Langford held the pre-termination hearing five days later. Langford followed up by talking with the fourth-grade teachers who reiterated Court's performance concerns. [ECF No. 25-10, PageID.207-209].

While Jones disagrees with AAPS' characterization of her job performance, Jones conceded that she initially struggled to use the copy machine. [ECF No. 25-2, PageID.154]. She admitted that Court spoke with her about her struggles with the copy machine and eating in front of the children in the classroom. Jones also acknowledged that Court told her that Ryan did not believe it was useful to have Jones in the classroom because she did not interact with the children. [ECF No. 25-2, PageID.155].

Though there may be questions of fact regarding what exact behavior Jones did or did not engage in, those questions are immaterial: based on the evidence in this record, the Court finds Langford conducted an adequate investigation and formed an honest, good-faith belief, based on particularized facts, that Jones' performance was not satisfactory. *See Majewski v. Automatic Data Processing*, 274 F.3d 1106, 1117 (6th Cir.2001) ("[A]s long as an employer has an honest belief in its proffered

11

nondiscriminatory reason for [the adverse employment action], the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.").

There is no direct evidence of racial discrimination. This theory of liability utterly fails.

### ii. No Circumstantial Evidence

To even have a shot at surviving summary judgment, Jones is left to establish a *prima facie* case of disparate treatment relying on the *McDonnell Douglas-Burdine* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

This framework requires the plaintiff to show: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for his job and performed it satisfactorily; (3) despite [her] qualifications and performance, [s]he suffered an adverse employment action; and (4) . . . [s]he . . . was treated less favorably than a similarly situated individual outside [her] protected class." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000).

If the plaintiff satisfies this, "a mandatory presumption of discrimination is created and the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's

12

rejection.'" *Id.* at 573 (citation omitted). "If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.* A plaintiff can establish that the proffered reason was a mere pretext by showing that the stated reason: (1) had no basis in fact; (2) was not the actual reason; and (3) was insufficient to explain the defendant's action. *Id.* "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* (citation omitted).

### a. Similarly Situated

Jones' claim fails on the fourth prong of the *McDonnell Douglas–Burdine* test. "To be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it*." Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998) (internal quotation omitted). The Sixth Circuit has emphasized that "the plaintiff [must] demonstrate that he ... is similarly-situated to the non-protected employee in all relevant respects." *Id*. at 353 (emphasis retained).

Jones produced her own evaluations and those of three other persons, none of whom was a probationary teaching assistant as she was.

Furthermore, Jones testimony reveals the absence of similarly situated comparators. Jones testified:

> Q. Can you identify any white teaching assistants who came in late to school and were not disciplined?
>
> A. No.
>
> Q. Can you tell me whether or not there was [sic] any white teaching assistants who had their phone go off during class?
>
> A. No, I don't know of anybody that had those things happen.
>
> Q. And can you tell me any white teaching assistants who had trouble getting papers copied for their teachers?
>
> A. I don't know of any white assistants that had that problem....
>
> Q. Do you know of any white teaching assistants that had problems correcting papers?
>
> A. I don't know. No. I didn't talk to any of the white teaching assistants.

[ECF No. 25-2, PageID.162].

Jones fails to meet her burden to show that there was a white probationary teaching assistant similarly situated to her in all respects. Jones cannot establish a *prima facie* case of race discrimination.

14

## V. CONCLUSION

The Court **GRANTS** AAPS' motion for summary judgment [ECF No. 25]. This case is dismissed.

**IT IS ORDERED**.

s/ Victoria A. Roberts<br>Victoria A. Roberts<br>United States District Judge

Dated: March 12, 2021